UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

March 28, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:   *Ja'Quan T. v. Leland Dudek, Acting Commissioner, Social Security Administration*[1]
      Civil No. 24-0344-CDA

Dear Counsel:

On February 2, 2024, Plaintiff Ja'Quan T. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8) and the parties' briefs (ECFs 11, 13, 14). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff protectively filed a Title XVI application for Supplemental Security Income ("SSI") benefits on August 17, 2018, alleging a disability onset of September 16, 2017. Tr. 709-14. Plaintiff's claims were denied initially and on reconsideration. Tr. 645-53. On August 5, 2020, an Administrative Law Judge ("ALJ") held a hearing. Tr. 576-603. Following the hearing, on August 18, 2020, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 18-36. The Appeals Council denied Plaintiff's request for review, Tr. 1-7, and Plaintiff then appealed to this Court on February 25, 2021, Tr. 2947-49. The Court remanded Plaintiff's case to the SSA for further proceedings with the consent of both parties. *Ja'Quan T. v. Saul*, No. JMC-21-0480, ECF 15 (D. Md. Dec. 7, 2021); *see also* Tr. 2959-63.

On remand, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ. Tr. 2959-65. A different ALJ held a second hearing on February 23, 2023, Tr. 2840-2915,

---

[1] Plaintiff filed this case against Martin O'Malley, the Commissioner of Social Security, on February 2, 2024. ECF 1. Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025. Accordingly, Commissioner Dudek has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

and a supplemental hearing on September 7, 2023, Tr. 2805-39. On October 4, 2023, the ALJ issued their decision and found that Plaintiff was not disabled. Tr. 2776-2804. The second ALJ's decision constitutes the final, reviewable decision of the SSA. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.     THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since August 17, 2018, the application date." Tr. 2782. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "neurocognitive disorder status-post traumatic brain injury, cannabis use disorder, unspecified trauma-and-stressor-related disorder, conduct disorder, and major depressive disorder." Tr. 2782. The ALJ also determined that Plaintiff suffered from the non-severe impairments of hypertension and asthma. Tr. 2783. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 2783. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to understanding and carrying out simple instructions. Can use judgment to make simple work-related decisions. No work at a specific production-rate pace, as in an assembly line or where work requires hourly quotas. Occasional interaction with supervisors, coworkers, and the public. Limited to work requiring only occasional changes in the routine work setting.

Tr. 2787. The ALJ determined that Plaintiff had no past relevant work but could perform jobs that existed in significant numbers in the national economy. Tr. 2794. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 2795.

## III.    LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application

of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV. ANALYSIS

On appeal, Plaintiff argues that the ALJ failed to provide a proper narrative discussion to support the conclusion that Plaintiff's severe impairments necessitated a limitation that Plaintiff is unable to "work at a specific production-rate pace, as in an assembly line or where work requires hourly quotas." ECF 11, at 7-13; ECF 14, at 1-9. Defendant counters that the ALJ properly accounted for Plaintiff's moderate concentration, persistence, and pace ("CPP") limitations when formulating the RFC and supported the RFC determination with substantial evidence. ECF 13, at 6-14.

The Court finds that the ALJ properly accounted for Plaintiff's moderate CPP limitations and amply supported the RFC determination with substantial evidence. A claimant's RFC represents "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a). In assessing RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

When a claimant possesses a mental impairment, an ALJ is required to make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)). One of these four areas, CPP, concerns "the abilities to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" limitation in CPP means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.*

Specific to a limitation in the functional area of CPP, an ALJ must then expressly account for such limitation, or explain why no limitation exists, in the function-by-function analysis. *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). An ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately

address the claimant's CPP limitations. *See Mascio*, 780 F.3d at 638; *Shinaberry*, 952 F.3d at 121–22. However, as *Mascio* explained, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Lori S. v. Kijakazi*, No. BAH-21-2034, 2022 WL 1721192, at *3 (D. Md. May 27, 2022) (quoting *Mascio*, 780 F.3d at 638). An ALJ may accommodate a claimant's moderate CPP limitations by assigning persuasive value to a medical opinion that "provide[s] substantial support for" the ALJ's CPP-related RFC provisions. *Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017). In other words, where an ALJ finds that a "plaintiff [i]s moderately limited in CPP, the ALJ must account for those limitations in the RFC or explain how plaintiff could maintain CPP while performing simple, routine tasks." *Everlena G. v. Kijakazi*, No. DLB-20-0784, 2021 WL 3912277, at *3 (D. Md. Sept. 1, 2021).

Plaintiff argues that the ALJ failed to provide a proper narrative discussion of the RFC's production-rate pace limitation, rendering the ALJ's RFC determination unsupported by substantial evidence.[3] ECF 11, at 7-13. Specifically, Plaintiff contends that the ALJ failed to connect the RFC's production-rate pace provision to Plaintiff's moderate CPP limitation such that it is unclear why the ALJ "believed such a limitation would be sufficient to accommodate Plaintiff's impairments." *Id.* at 9-12. The Court finds these arguments unavailing.

At step three, the ALJ concluded Plaintiff had a moderate CPP limitation. Tr. 2785. The ALJ's RFC states Plaintiff is "limited to understanding and carrying out simple instructions. Can use judgment to make simple work-related decisions. No work at a specific production-rate pace, as in an assembly line or where work requires hourly quotas." Tr. 2787. The ALJ's RFC further states Plaintiff is limited to "[o]ccasional interaction with supervisors, coworkers, and the public. Limited to work requiring only occasional changes in the routine work setting." Tr. 2787. The ALJ's reliance on the opinions of Dr. Rutt and the state agency mental consultants, Drs. Lake and Smith, in crafting the RFC provides support for the CPP limitations incorporated therein and enables the Court to perform meaningful review.

Dr. Rutt opined, among other things, that Plaintiff had a moderate limitation in sustained concentration and persistence. Tr. 2609. The ALJ found Dr. Rutt's opinion "generally persuasive," concluding that the moderate limitations "are consistent with and supported by the record." Tr. 2793. Drs. Lake and Smith determined that Plaintiff had a moderate CPP limitation. Tr. 611, 616-17, 625, 628-29, 2970. The state agency mental consultants opined that Plaintiff had moderate limitations in his ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within

---

[3] Plaintiff suggests in his reply that the ALJ failed to properly define "production-rate pace," asserting that remand is further warranted because the limitation proposed by the ALJ in his hypothetical to the vocational expert is not defined by regulation or the DOT. ECF 14, at 3-5. By presenting this argument for the first time in his reply, Plaintiff waives it. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop [its] argument—even if [its] brief takes a passing shot at the issue.") (internal quotation marks omitted).

customary tolerances, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 616, 628-29, 2972. Dr. Lake further opined that Plaintiff had a marked limitation in his ability to carry out detailed instructions, whereas Dr. Smith opined that Plaintiff had a moderate limitation in his ability to carry out detailed instructions as well as in his ability to work in coordination with or in proximity to others without being distracted by them. Tr. 616, 628, 2972. The ALJ found Drs. Lake's and Smith's opinions partially persuasive, noting that the moderate limitation findings "are generally supported by the record." Tr. 2792. The ALJ also noted that the RFC limited Plaintiff to simple work to account for Plaintiff's marked limitation "in his ability to complete detailed work." Tr. 2792.

The ALJ crafted an RFC incorporating a limitation to understanding and carrying out simple instructions, simple work-related decisions, and a restriction from performing work at a specific production-rate pace—the same provisions set forth in Drs. Lake's, Smith's, and Rutt's opinions. Tr. 2787. The ALJ expressly determined that due to Plaintiff's limitations, he could perform "no work at a specific production-rate pace, as in an assembly line or where work requires hourly quotas[.]" Tr. 2794. Given the ALJ's adoption of Drs. Lake's, Smith's, and Rutt's opinions related to Plaintiff's CPP limitations, the ALJ's decision provides the requisite "logical bridge" connecting the evidence of Plaintiff's concentration issues to the RFC provision restricting Plaintiff from specific production-rate work. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). As such, the Court determines that Drs. Lake's, Smith's, and Rutt's opinions "provided substantial support" for the RFC assessed in this case and that the ALJ's adoption of these opinions permits meaningful review. Tr. 2787-94; *see also Onishea v. Barnhart*, 116 F. App'x 1, 2 (5th Cir. 2004) ("The ALJ based his assessment of [the claimant's] RFC, in part, on the state examiner's function-by-function analysis[.] Thus, the ALJ employed the legal standard set forth in . . . SSR 96–8p in determining [the claimant's] RFC.").

This Court has previously held that a restriction from performing at a production rate pace adequately accounts for a claimant's moderate CPP limitation. *See, e.g.*, *Teresa B. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-2280, 2019 WL 2503502, at *2 (D. Md. June 17, 2019) (holding that an RFC provision limiting a claimant to "no work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the other)" was sufficient to address a moderate CPP limitation); *Kenneth L. v. Kijakazi*, No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021) (holding that a limitation to "no strict production quotas" was sufficient to address moderate CPP limitations); *Lori S.*, 2022 WL 1721192, at *3 (holding that the ALJ accounts for Plaintiff's moderate CPP limitations when limiting Plaintiff to "no production rate or pace work[,] [t]hat is no assembly line or high production quota[.]"). Additionally, our sister court has held that where an ALJ "finds moderate limitation in CPP" and "has included a . . . restriction to 'non-production oriented' work, *Mascio* does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant . . . that he or she cannot perform even non-production-type work because of his or her particular CPP deficits." *Grant v. Colvin*, No. 15-0515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016), *recommendation adopted*, slip op. (M.D.N.C. Sept. 21, 2016).

Ja'Quan T. v. Dudek
Civil No. 24-0344-CDA
March 28, 2025
Page 6

     A careful review of the ALJ's decision reveals that the ALJ provided substantial evidence for the RFC provisions accounting for Plaintiff's moderate CPP limitations. The ALJ examined the objective medical evidence of Plaintiff's mental limitations and found that Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms," are inconsistent with his "admitted daily activities and abilities." Tr. 2789. The ALJ noted that Plaintiff reported "no problem with his personal care, he cleans his room, mows the lawn, helps with household chores, . . . takes out the trash," and "could make a bowl of cereal and fix a sandwich, he has a learner's permit, he knows how to drive a car, he uses a computer for Google and YouTube, and that he sends text messages." Tr. 2789. Additionally, Plaintiff reported that he "shops in stores, he finishes what he starts, he can pay attention for as long as he chooses to, he reads, and makes music every day, he is good at handling changes in routine, and that he can walk 5 miles before needing to stop and rest." Tr. 2789. The ALJ observed that during a January 2019 psychological consultative examination, Plaintiff reported he could "care for his personal needs independently." Tr. 2789.

     The ALJ acknowledged that in November 2018, Plaintiff reported "difficulty paying attention in school, following directions, and understanding and concentration," following a motor vehicle accident. Tr. 2793. During Plaintiff's examination with Dr. Rutt, Plaintiff presented with a rowdy mood, anxious affect, poor abstract reasoning, below average fund of knowledge, and poor insight and judgment. Tr. 2793. The ALJ observed, however, that Plaintiff exhibited normal hygiene and grooming, cooperation during the exam, normal eye contact, normal speech as to rate, volume, and tone, organized thoughts, no loose associations or flight of ideas, no delusions or suicidal or homicidal ideations, and that Plaintiff remained alert and oriented to time, place, person, and the situation. Tr. 2793. Plaintiff also reported he "has access to a computer, he uses social media, and that he spends 'a lot' of hours each day on recreational electronics, specifically games and movies." Tr. 2793.

     An aggressive outburst at home resulted in Plaintiff receiving care via emergency petition in August 2019. Tr. 2793. The ALJ noted, however, that "after only a brief encounter," mental status testing revealed Plaintiff with a euthymic mood, full range affect, cooperation, no psychomotor agitation or retardation, logical and goal directed thoughts, normal speech, average fund of knowledge, and oriented to time place, person, and the circumstances. Tr. 2793. Mental status testing in February 2020 showed Plaintiff with a pleasant mood, average intelligence, and fair judgment. Tr. 2793. Plaintiff also scored a 26/30 on the mini-mental status examination in November 2018, and a 25/30 in January 2020. Tr. 2793. After examining the objective evidence, the ALJ concluded that Plaintiff could perform a full range of work at all exertion levels, except that Plaintiff's limitations "support a further reduction to understanding and carrying out simple instructions; using judgment to make simple work-related decisions; no work at a specific production-rate pace, as in an assembly line or where work requires hourly quotas; occasional interaction with supervisors, coworkers, and the public; and occasional changes in the routine work setting." Tr. 2793. The ALJ found these limitations "consistent with the medical evidence." Tr. 2793.

     Plaintiff fails to identify any RFC provisions that the ALJ should have included in lieu of

*Ja'Quan T. v. Dudek*
Civil No. 24-0344-CDA
March 28, 2025
Page 7

the provision at issue in this case. *See generally* ECFs 11, 14. Plaintiff also fails to explain how a more detailed explanation of the mental RFC might change the outcome of this case. Rather, Plaintiff argues that the ALJ's lack of explanation precludes judicial review. ECF 11, at 7-13. But, as noted above, the ALJ's adoption of Drs. Lake's, Smith's, and Rutt's opinions and other review of the objective medical evidence of the record support the ALJ's determinations regarding Plaintiff's CPP limitations. *See Sizemore*, 878 F.3d at 80-81. Accordingly, remand is unwarranted because the Court's review is not "frustrate[d]" by "inadequacies in the ALJ's analysis[.]" *Mascio*, 780 F.3d at 636.

## V.  CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge